UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY L. WILLIAMS,

        Petitioner,

                                        CASE NO. 11-14801

v.                                      HONORABLE SEAN F. COX

LLOYD RAPELJE,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

Pending before the Court is petitioner Timothy L. Williams's *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for carjacking and assault with intent to rob while armed. Petitioner alleges that the evidence adduced at trial was insufficient, the jury's verdict was inconsistent, he was deprived of a fair trial by the victim's reference to a bullet fragment in his eye and by the prosecutor's closing arguments, he is entitled to be re-sentenced, and trial counsel was ineffective for failing to move to suppress his statements to the police. Respondent Lloyd Rapelje argues in a responsive pleading filed through counsel that four of Petitioner's claims are procedurally defaulted and that his other claims lack merit or are not cognizable in a habeas action. Having reviewed the pleadings and record, the Court concludes that the state court's adjudication of Petitioner's claims was objectively reasonable. The habeas petition therefore is denied. A procedural history and analysis of Petitioner's claims follow.

## I. BACKGROUND

**A. The Charges, Trial, Sentence, and Appeal**

Petitioner was charged in Wayne County, Michigan with seven counts:  assault with intent to rob while armed, Mich. Comp. Laws § 750.89; carjacking, Mich. Comp. Laws § 750.529a; assault with intent to commit murder, Mich. Comp. Laws § 750.83; assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; felonious assault, Mich. Comp. Laws § 750.82; and possession of a firearm during the commission of, or attempt to commit, a felony, Mich. Comp. Laws § 750.227b. Petitioner was tried before a jury in Wayne County Circuit Court where the evidence established that,

> [i]n the early morning hours of June 6, 2008, Andre Le-France, a federal air marshal, was on his way home when he stopped to order food at a Coney Island restaurant drive-thru.  After Le-France had placed his order, a young man wearing a bandana over his face and carrying what appeared to be a gun in his hand, approached the open window of Le-France's vehicle, and ordered Le-France out of the vehicle.  As Le-France was reaching for his own service weapon, he saw and heard a gunshot.  Le-France fired several shots at defendant and defendant ran from the vehicle.  Le-France attempted to pursue defendant, then gave up and returned to his vehicle.  Defendant was apparently hit with Le-France's shots and, immediately after the incident, went to the hospital for treatment of his gunshot wounds.  Defendant was later arrested.

*People v. Williams*, No. 288704, 2010 WL 4671107 (Mich. Ct. App. Nov. 18, 2010).

On September 22, 2008, the jury found Petitioner guilty of assault with intent to rob while armed, Mich. Comp. Laws § 750.89, and carjacking, Mich. Comp. Laws § 750.529a.  The jury acquitted Petitioner of the other five charges.  The trial court subsequently sentenced Petitioner as a habitual offender, second offense, to

imprisonment for two consecutive terms of eighteen to thirty-five years in prison.

Petitioner appealed his convictions and sentence and then moved to remand his case to the trial court for re-sentencing and an evidentiary hearing. The Michigan Court of Appeals declined to remand the case for re-sentencing, but it granted Petitioner's request for a remand to hold an evidentiary hearing on his claim of ineffective assistance of trial counsel.

On remand, Petitioner moved for a new trial on the ground that his trial attorney should have moved to suppress his statements to the police. The trial court conducted an evidentiary hearing and then denied Petitioner's motion after concluding that trial counsel was not ineffective for failing to attempt to suppress Petitioner's statements to the police.

The Court of Appeals subsequently affirmed Petitioner's convictions, but remanded his case for re-sentencing because his sentencing guidelines were calculated incorrectly. *See Williams*, 2010 WL 4671107.[1] On April 25, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Williams*, 489 Mich. 899; 796 N.W.2d 89 (2011) (table).[2]

**B. The Habeas Petition and Answer**

On November 1, 2011, Petitioner filed his habeas corpus petition in this Court. He argues that: (1) there was insufficient evidence to sustain his conviction for assault

---

[1] Petitioner was re-sentenced on June 21, 2013, to two consecutive terms of fourteen years to thirty-five years in prison. *See People v. Williams*, No. 08-008423-01-FC (3rd Jud. Dist. Ct., June 21, 2013).

[2] Justice Brian K. Zahra did not participate in the decision because he served on the Michigan Court of Appeals panel.

3

with intent to rob while armed; (2) there was insufficient evidence to sustain his conviction for carjacking; (3) his assault conviction must be vacated because it is inconsistent with his acquittal on the charges for felonious assault and felony firearm; (4) evidence that the complainant may have a bullet fragment in his eye deprived him of a fair trial; (5) the prosecutor deprived him of a fair trial by misstating the law and by bolstering the credibility of the star prosecution witness; (6) he is entitled to re-sentencing because (a) the statute does not contemplate consecutive sentencing, (b) his sentence was disproportionate, and (c) he was not given credit for time spent in custody prior to sentencing; and (7) trial counsel was ineffective for failing to move to suppress his statements to the police.  Petitioner incorporates by reference his state appellate briefs.

Respondent urges the Court to deny the habeas petition on the grounds that Petitioner procedurally defaulted claims III, IV, V, and VI and that his remaining claims lack merit or are not cognizable on habeas review.  "Procedural default is not a jurisdictional bar to review on the merits."  *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).  Consequently, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

Furthermore, to obtain habeas relief on claims that were procedurally defaulted in state court, a petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious."  *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004)).

4

Petitioner's claims lack substantive merit, and because a "cause-and-prejudice analysis adds nothing but complexity to the case," the Court "cut[s] to the merits here."  *Id.*

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  While some federal judges find the limitations of 28 U.S.C. § 2254(d) too confining, all federal judges must obey the provision of law.  *White v. Woodall*, __ U.S. __, __, 134 S. Ct. 1697, 1701 (2014).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).  "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559  U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

### III.  ANALYSIS

#### A.  Sufficiency of the Evidence

The first two habeas claims allege that there was insufficient evidence at trial to sustain Petitioner's convictions for assault with intent to rob while armed and carjacking. The Michigan Court of Appeals adjudicated these claims on the merits and concluded that there was sufficient evidence for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt of assault with intent to rob while armed and carjacking.

6

### 1.  Clearly Established Federal Law

The United States Supreme Court has held that "the Due Process Clause

protects the accused against conviction except upon proof beyond a reasonable doubt

of every fact necessary to constitute the crime with which he is charged."  *In re Winship*,

397 U.S. 358, 364 (1970).  After *Winship*, the critical inquiry on habeas review of the

sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt
> beyond a reasonable doubt.  But this inquiry does not require a court to
> "ask itself whether *it* believes that the evidence at the trial established guilt
> beyond a reasonable doubt." Instead, the relevant question is whether,
> after viewing the evidence in the light most favorable to the prosecution,
> *any* rational trier of fact could have found the essential elements of the
> crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted)

(emphases in original).

"Two layers of deference apply to habeas claims challenging evidentiary

sufficiency."  *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v.

Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)).  First, the Court "must determine

whether, viewing the trial testimony and exhibits in the light most favorable to the

prosecution, *any rational trier of fact* could have found the essential elements of the

crime beyond a reasonable doubt."  *Brown v. Konteh*, 567 F.3d at 205 (citing *Jackson*,

443 U.S. at 319) (emphasis in original).  Second, even if the Court were "to conclude

that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable

doubt, on habeas review, [the Court] must still defer to the *state appellate court's*

sufficiency determination as long as it is not unreasonable."  *Id*. (emphases in original).

### 2.  Assault With Intent To Rob While Armed

7

"The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).  In Michigan, the elements of assault with intent to rob while armed are:  " '(1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant[] being armed.' "  *People v. Gibbs*, 299 Mich. App. 473, 490; 830 N.W.2d 821, 830 (2013) (quoting *People v. Akins*, 259 Mich. App. 545, 554; 675 N.W.2d 863, 873 (2003)), *leave to appeal denied*, 495 Mich. 889; 838 N.W.2d 875 (2013).

The only element in dispute here is whether Petitioner was armed.  He maintains that there was no evidence he was armed with a weapon or with an article used or fashioned in such a way as to lead the victim to believe he had a weapon.  Petitioner also claims that he did not do or say anything to suggest that he had a weapon.

Mr. Le-France, however, testified that Petitioner appeared to be holding a firearm as he approached Le-France's vehicle from behind.  Le-France described the weapon as a small semi-automatic handgun with a long black barrel.  He thought the weapon was a .22 caliber or nine-millimeter gun.  He claimed to have seen a muzzle flash and to have heard a loud explosion after Petitioner reached his vehicle, and he maintained that Petitioner fired at him before he was able to shoot Petitioner.  Although he saw the gun for only a fraction of second, Petitioner was just twelve to fourteen inches away from him at the time.  He (Le-France) realized that he had been shot as he attempted to pursue Petitioner.  He was later treated in the hospital for a foreign substance, possibly a bullet fragment, in his right eye.  (Trial Tr. Vol. I,101-06, 118-19, 121-26, 128, Sept. 17, 2008.)

8

A rational trier of fact could have concluded from this testimony that Petitioner was armed during the incident with Mr. Le-France.  Consequently, Petitioner's claim lacks merit.

### 3.  Carjacking

Petitioner alleges that there was no evidence to support his carjacking conviction because he did not take Mr. Le-France's vehicle.  Petitioner maintains that all he did was run up to Mr. Le France's vehicle and shout, "Get out of the car."

The carjacking statute provides that,

[a] person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking . . . .

Mich. Comp. Laws § 750.529a(1).  Carjacking includes attempts to commit a larceny of a motor vehicle.  *See* Mich. Comp. Laws § 750.529a(2) ("As used in this section, 'in the course of committing a larceny of a motor vehicle' includes acts that occur in an attempt to commit the larceny . . . ."); *see also People v. Glenn Williams*, 288 Mich. App. 67, 80; 792 N.W.2d 384, 391 (2010) (noting that, when the state legislature amended the statute it "removed the language 'robs, steals, or takes,' insinuating that the revised statute was intended to include attempts to commit the designated crime").

Although Petitioner did not take Mr. Le-France's vehicle, he admitted at trial that he ran toward the vehicle and yelled to Mr. Le-France, "Get out of the car."  He also admitted that his intent was to take the vehicle.  (Trial Tr. Vol. II, 99-101, 117-18, Sept. 18, 2008.)  Mr. Le-France, moreover, testified that he pulled out his own weapon because he felt that he was in danger when Petitioner approached him with a red

9

bandanna partially covering his face.  (Trial Tr. Vol. I, 101, 128, Sept. 17, 2008.)

Furthermore, one of the first police officers to arrive at the crime scene testified that Mr.

Le-France was upset and shaken after the shooting.  (Trial Tr. Vol. II, 49-50, Sept. 18,

2008.)

A rational juror could have concluded from the evidence taken in the light most

favorable to the prosecution that Petitioner attempted to take a vehicle from someone

who was in lawful possession of the vehicle and that he did so by frightening the

occupant.  Thus, Petitioner's challenge to the sufficiency of the evidence supporting his

carjacking conviction lacks merit.

Even if the Court had determined that the evidence was insufficient to sustain the

jury's verdict, the state appellate court's conclusion – that the prosecutor produced

sufficient evidence on both the assault-with-intent-to-rob and carjacking counts – was

objectively reasonable.  Petitioner therefore has no right to relief on the basis of his first

two claims.

## B.  The Assault Conviction and Inconsistent Verdict

Petitioner claims next that his conviction for assault with intent to rob while armed

must be vacated because the conviction is inconsistent with his acquittal on other

charges, which require the use or possession of a weapon.  According to Petitioner, his

acquittal of charges that have possession of a weapon as an element[3] is an indication

that the jury did not believe he used a weapon during the incident on June 6, 2008.

---

[3] Petitioner was acquitted of three offenses that require the defendant to be armed with a firearm or other dangerous weapon:  felon in possession of a firearm, Mich. Comp. Laws § 750.224f; felony firearm, Mich. Comp. Laws § 750.227b(1); and felonious assault, Mich. Comp. Laws § 750.82(1).

The Michigan Court of Appeals reviewed this claim for "plain error" affecting Petitioner's substantial rights because he did not raise the issue in the trial court.  The Court of Appeals found no error affecting Petitioner's rights because, even though inconsistent verdicts can be a basis for reversing a conviction under state law, there was no evidence that Petitioner's jury was confused, did not understand the jury instructions, or did not know what it was doing.

The Supreme Court has stated that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside."  *Harris v. Rivera*, 454 U.S. 339, 345 (1981); *accord Dowling v. United States*, 493 U.S. 342, 353-54 (1990) (stating that "inconsistent verdicts are constitutionally tolerable"); *Dunn v. United States*, 284 U.S. 390, 393 (1932) (stating that "[c]onsistency in the verdict is not necessary"); *United States v. Smith*, 182 F.3d 452, 457 (6th Cir.1999) (stating that "[a] jury verdict will not be overturned simply because it is inconsistent or because the jury acquitted a defendant of a predicate offense.")  "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible.  But verdicts cannot be upset by speculation or inquiry into such matters."  *Dunn,* 284 U.S. at 394.  "[W]here truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' "  *United States v. Powell*, 469 U.S. 57, 64-65 (1984) (quoting *Dunn*, 284 U.S. at 393).

The state appellate court's decision that the inconsistent verdict was not a basis for vacating Petitioner's convictions was not contrary to *Rivera*, *Dowling, Dunn*, or *Powell*.  Thus, habeas corpus relief is not warranted on Petitioner's third claim that the

11

jury's verdict was inconsistent.

## C.  The Reference to a Bullet Fragment

The fourth habeas claim alleges that Mr. Le-France's reference to a possible bullet fragment in his eye deprived Petitioner of a fair trial.  Petitioner argues that, because the only contested issue in the case was whether he was armed with a gun, the jury could have inferred from Mr. Le-France's testimony about the bullet fragment that Petitioner possessed a firearm and used it to shoot Le-France.

This claim arose before trial when defense counsel moved to exclude any hearsay testimony regarding the bullet fragment in Mr. Le-France's eye.  Defense counsel argued that any statements describing what was in Mr. Le-France's eye would be hearsay under Michigan Rule of Evidence 801.  The trial court granted Petitioner's motion and ruled that the prosecutor could present evidence about an object in Mr. Le-France's eye, but that there would be no reference to a bullet fragment.  (Mot. Hr'g at 7, Sept. 15, 2008.)

At trial, Mr. Le-France testified that, after he got out of his vehicle and attempted to pursue Petitioner on foot, he could not see out of his right eye.  He also testified that blood was rolling down his face, and he concluded at the time that he had been shot. The prosecutor subsequently asked Mr. Le-France whether he went to the hospital, whether he was treated for any injuries and, if so, what type of injuries did he have.  Mr. Le-France responded that he currently had

> what they call a "foreign body substance" in the upper orbital region of my right eye.  Some people might say it's [a] bullet fragment but – because they don't know exactly what, fragments of rounds or whatever.  It's just [a] foreign body.

12

(Trial Tr. Vol. I, 106, Sept. 17, 2008.)  The prosecutor followed up by asking, "You don't know what it is?"  Mr. Le-France answered, "No. They don't, no."  (*Id.*)

Petitioner claims that Mr. Le-France's comment deprived him of a fair trial.  To the extent Petitioner is alleging an error in the application of the Michigan Rules of Evidence, his claim is not cognizable on habeas review, *Hall v. Vasbinder*,  563 F.3d 222, 239 (6th Cir. 2009), because "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (*per curiam*)).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Hodges*, 423 U.S. at 21).

Petitioner nevertheless claims that the prosecutor flouted the trial court's ruling by either failing to instruct Mr. Le-France not to mention the bullet fragment or by asking an open-ended question that allowed Le-France to give the prohibited answer.  The Michigan Court of Appeals disagreed.  It stated that the prosecutor's question was not open-ended and that there was no evidence the prosecutor conspired with Mr. Le-France or knew that Le-France would give an unresponsive answer.  The Court of Appeals also opined that the disputed testimony was not prejudicial.

### 1.  Clearly Established Federal Law

The Supreme Court has stated that prosecutors "may strike hard blows," but they are "not at liberty to strike foul ones.  It is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."  *Berger v. United States*, 295 U.S. 78, 88 (1935),

13

*overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960).  But

"[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review ."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344

F.3d 487, 512 (6th Cir. 2003)).  The relevant question is whether the misconduct "so

infected the trial with unfairness as to make the resulting conviction a denial of due

process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643 (1974)).

> Federal courts in this Circuit
>
> apply a "two-part test to determine whether the state court reasonably
> applied the federal standard in holding that prosecutorial misconduct did
> not render [the defendant's] trial fundamentally unfair."  *Irick v. Bell*, 565
> F.3d 315, 324 (6th Cir. 2009).  [Courts] first determine whether the
> prosecution's conduct was improper.  *Id.*  Second, [courts] determine
> whether that improper conduct was flagrant by considering four factors:
> "(1) whether the evidence against the defendant was strong; (2) whether
> the conduct of the prosecution tended to mislead the jury or prejudice the
> defendant; (3) whether the conduct or remarks were isolated or extensive;
> and (4) whether the remarks were made deliberately or accidentally."  *Id.*
> (internal quotation marks omitted).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir.), *cert. denied sub nom Wogenstahl

v. Robinson*, __ U.S. __, 133 S. Ct. 311 (2012).

**2. Analysis**

There is no reason to believe that the prosecutor intentionally elicited Mr. Le-

France's testimony about the bullet fragment.  In fact, the prosecutor did not contest

Petitioner's motion *in limine* to exclude hearsay about the bullet fragment, so long as

she was allowed to say that Mr. Le-France sought medical treatment for something that

was in his eye.  (Mot. Hr'g, 7, Sept. 15, 2008.)  She may have neglected to warn Mr. Le-

France not to mention the bullet fragment during his trial testimony or Mr. Le-France

14

may have forgotten that he was prohibited from saying anything about the fragment.

In any event, the evidence against Petitioner was substantial, and Mr. Le-France's remark about the bullet was an isolated one. It likely did not mislead the jury or prejudice the defense, because Le-France testified that no one knew the real nature of the foreign body in his eye. Additionally, as the Michigan Court of Appeals pointed out:

> [t]estimony that a bullet fragment injured Le-France's eye did not prove that defendant had a gun or fired a shot, because Le-France admitted to shooting his own gun four times. Furthermore, evidence technicians collected four casings from the crime scene, all from a 357-caliber weapon, which Le-France admitted that he possessed, and no gun was ever linked to defendant. Thus, evidence of a bullet fragment would not unfairly weigh on the jury's determination whether the nine-millimeter casing discovered by federal air marshals came from any weapon possessed by defendant. Moreover, as noted, the jury acquitted defendant of three weapons-related charges. Therefore, defendant cannot show that he was prejudiced by testimony about the bullet fragment.

*Williams*, 2010 WL 4671107, at *4.

The Court concludes that the prosecutor's conduct was not improper and, even if it were, the conduct was not flagrant. Petitioner therefore has no right to relief on the basis of his claim about the bullet fragment.

## D. The Prosecutor

The fifth habeas claim alleges that the prosecutor committed additional misconduct during her closing arguments. Specifically, Petitioner asserts that the prosecutor misstated the law and bolstered Mr. Le-France's credibility. Petitioner further alleges that trial counsel's failure to object to the prosecutor's remarks constituted ineffective assistance of counsel.

15

The Michigan Court of Appeals reviewed Petitioner's prosecutorial-misconduct claims for "plain error" because Petitioner did not make a contemporaneous objection at trial or request a curative jury instruction. The Court of Appeals then analyzed Petitioner's claims and concluded that the prosecutor did not bolster Le-France's credibility, and even though the prosecutor did misstate the law, the trial court's proper instructions on the law cured the error.

### 1. Legal Framework

As noted above, prosecutorial misconduct may warrant habeas corpus relief only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. at 181. To prevail on his claim about trial counsel, Petitioner must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

To satisfy the prejudice prong of the *Strickland* test, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

### 2. Misstating the Law

16

Petitioner alleges that the prosecutor misstated the law during closing arguments when she said that the jury could find Petitioner guilty of assault with intent to rob while armed on the basis of testimony that he had his hands in his pockets when he approached the victim.  (Trial Tr. Vol. III, 9-10, Sept. 22, 2008.)  Petitioner claims that, absent the error, he might have been convicted of assault with intent to commit unarmed robbery.

Prosecutors may not misstate the law.  *See Caldwell v. Mississippi*, 472 U.S. 320, 340 (1985) (reversing the petitioner's death sentence because of the prosecutor's improper argument and the possibility that, "[s]uch comments, if left uncorrected, might so affect the fundamental fairness of the sentencing proceeding as to violate the Eighth Amendment").  And, in this case, the Michigan Court of Appeals determined that the prosecutor actually misstated the law when she told the jury that merely having one's hand in a pocket was sufficient evidence of the "armed" element of assault with intent to rob.  According to the Court of Appeals, there must be some objective evidence that the defendant had a weapon or an article that could lead the victim to believe the defendant was armed.

The Court of Appeals nevertheless determined that the trial court cured the error by correctly instructing the jurors that the defendant must have

> one, possessed a weapon designed to be dangerous and capable of causing death or serious injury; or two, possessed any object capable of causing death or serious injury that the Defendant used as a weapon; or [three], possessed any other object used or fashioned in a manner to leave the person who was present to reasonably believe that it was a dangerous weapon; or [four] represented orally or otherwise that he was in possession of a weapon.

(Trial Tr. Vol. III, 46, Sept. 22, 2008.)

17

The trial court also instructed the jurors that the lawyers' statements and arguments were not evidence and that the jurors should take the law as given to them by the court because it was the court's duty to tell them the applicable law.  (*Id.* at 37, 39-40.)  The court specifically said, "You must take the law as I give it to you.  If a lawyer says something different about the law, follow what I say."  (*Id.* at 37.)  The jury is presumed to have followed these instructions.  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

Furthermore, even though Petitioner testified that he initially had his hands in his pockets when he approached Mr. Le-France's truck, he admitted that he removed his hands from his pockets as he ran toward Le-France's vehicle.  (Trial Tr. Vol. II, 99, Sept. 18, 2008).  And Mr. Le-France testified that Petitioner was holding a gun near his (Petitioner's) abdomen.  (Trial Tr. Vol. I, 121, Sept. 17, 2008.)

Given the trial court's proper instructions on the law and testimony that Petitioner removed his hands from his pockets and possessed a gun during the incident, the prosecutor's inaccurate statement of the law could not have had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  Therefore, the error was harmless, and the state appellate court's conclusion – that the trial court cured the error during its charge to the jury – was objectively reasonable.  Petitioner has no right to relief on the basis of his claim that the prosecutor misstated the law.

### 3. Bolstering

Petitioner alleges that the prosecutor bolstered Mr. Le-France's credibility by

18

arguing to the jury that Le-France had told the truth and that Le-France did not have to worry about disciplinary or criminal charges being brought against him because he was justified in shooting Petitioner.  Petitioner contends that these comments deprived him of a fair trial, and because credibility was a crucial factor, the error was not harmless. The Michigan Court of Appeals disagreed and concluded that the prosecutor did not engage in bolstering, nor make an improper argument as to whether Le-France was subject to discipline.

"  'Improper bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.' "  *United States v. Ross*, 703 F.3d 856, 875-76 (6th Cir. 2012) (quoting *Passino v. Tessmer*, 61 F. App'x 291, 296 (6th Cir. 2004)).  None of the prosecutor's remarks in this case suggested that she was aware of facts unknown to the jury or that some undisclosed evidence demonstrated Mr. Le-France's truthfulness.  Instead, she contrasted Petitioner's version of the facts with Mr. Le-France's testimony and suggested that Le-France's testimony was corroborated by the other evidence.  (Trial Tr. Vol. III, 10-19, Sept. 22, 2008.)  Although at one point she said that Le-France had "not been shown to be anything but truthful in this matter," (*id.* at 19), she did not infer that she had personal knowledge about Mr. Le-France's truthfulness or that his truthfulness was based on evidence not before the jury.  At most, she was arguing that the jury could infer Mr. Le-France was credible based on the totality of the evidence.

As for the prosecutor's rebuttal argument that Le-France was not fired or charged with a crime for shooting Petitioner (*id.* at 33-34), this was a response to defense counsel's closing argument.  Defense counsel insinuated in his closing argument that

19

Mr. Le-France fabricated his story to get out of trouble, to avoid losing his job, and to justify his shooting of Petitioner. (*Id.* at 21-23.)  Defense counsel also argued to the jury that Le-France's testimony was "a cover story for what he did" and an attempt to stay out of trouble for shooting someone.  (*Id.* at 25-26.)  In response, the prosecutor stated that Le-France was justified in using deadly force and that he was never charged with a crime and did not "have to cover his butt." (*Id.* at 33-34.)  The prosecutor was "entitled to wide latitude in [her] rebuttal argument and [to] fairly respond to arguments made by defense counsel."  *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (citing *DeChristoforo*, 416 U.S. at 637).

### 4.  Summary

The prosecutor's comments were either proper or not so egregious as to be flagrant.  Consequently, defense counsel was not ineffective for failing to object to the prosecutor's remarks, and the state appellate court's rejection of Petitioner's claims was objectively reasonable.  Petitioner is not entitled to relief on the basis of his prosecutorial-misconduct and ineffective-assistance-of-counsel claims.

## E.  The Sentence

Petitioner asserts that he is entitled to be re-sentenced because the trial court (1) sentenced him to consecutive terms of imprisonment, (2) imposed a disproportionate sentence, and (3) failed to give him credit for time spent in custody prior to sentencing. The Michigan Court of Appeals determined that Petitioner did not preserve these issues for appeal and that the issues also lacked merit.

### 1.  Consecutive Sentences

Petitioner alleges that he was improperly sentenced to consecutive sentences for his carjacking and assault convictions.  Although the carjacking statute authorizes a sentence that "run[s] consecutively to any other sentence imposed for a conviction that arises out of the same transaction," Mich. Comp. Laws § 750.529a(3), Petitioner argues that the intent of both "offenses" was to take the vehicle, and the property involved in both offenses was the same vehicle.  Consequently, according to him, there was only one offense and the consecutive sentences were improper.

The Michigan Court of Appeals disagreed with Petitioner and pointed out that the statute expressly authorizes consecutive sentences for separate convictions arising out of the same transaction.  The Court of Appeals concluded that the consecutive sentences were permissible and that Petitioner's claim lacked merit.

The state court's interpretation of state law binds this Court sitting in habeas corpus.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *McGuire*, 502 U.S. at 67–68, and *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).  And even though Petitioner asserts that his sentence also violates his constitutional right to due process of law, his sentence of eighteen to thirty-five years fell within the statutory maximum of life imprisonment or any term of years.  *See* Mich. Comp. Laws § 750.89 (assault with intent to rob while armed); Mich. Comp. Laws § 750.529a(1)(carjacking).  The duration or severity of a sentence that is within statutory limits generally is not a basis for habeas corpus relief.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.' " *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337

21

U.S. 241, 245 (1949)).  The Court therefore declines to grant relief on Petitioner's claim about his consecutive sentences.

### 2. Proportionality

Petitioner alleges next that the trial court abused its discretion by imposing a sentence that was disproportionate to the crime and the offender.  Petitioner points out that consecutive sentences are discretionary under the statute and that, when doubled, his two minimum sentences of eighteen years require him to serve at least thirty-six years in prison. This is almost twice as much as the minimum sentence of nine to eighteen and three-quarter years recommended under the sentencing guidelines. Petitioner also points out that he was shot five times during the incident, he does not have a lengthy or serious criminal record, and the jury found him not guilty of the firearm offenses.

The Michigan Court of Appeals found no merit in Petitioner's argument.  The Court of Appeals stated that proportionality was not an issue because it appeared that the trial court did not intend to depart from the guidelines.

This Court finds no merit in Petitioner's constitutional claim because the Eighth Amendment to the United States Constitution "does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).

"[T]he Supreme Court has held that life sentences for even nonviolent offenses are constitutional." *United States v. Watkins*, 509 F.3d 277, 282 (6th Cir. 2007) (citing

22

*Ewing v. California*, 538 U.S. 11, 30-31 (2003) (upholding a repeat offender's sentence of twenty-five years to life imprisonment for stealing three golf clubs), and *Harmelin*, 501 U.S. at 994-95 (upholding a life sentence without the possibility of parole for possession of 672 grams of cocaine)).  If the life sentences for nonviolent sentences in *Ewing* and *Harmelin* were not grossly disproportionate, Petitioner's sentence of eighteen to thirty-five years for an assault involving a firearm was not grossly disproportionate.

Furthermore, Petitioner was twenty-five years old at sentencing, and, as noted above, his sentence fell within the statutory maximum of life imprisonment or any term of years.  "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment' " under the Eighth Amendment.  *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995).  The Court therefore denies relief on Petitioner's claim that his sentence was disproportionate to the crime and the offender.

### 3.  Credit for Time Served

Petitioner's final sentencing claim alleges that he was erroneously denied credit for time served in the county jail while awaiting trial and sentencing. The Michigan Court of Appeals rejected this claim on the basis that the jail-credit statute did not apply to Petitioner.

The state court's alleged misinterpretation of Michigan's jail-credit statute is a matter of state concern only, *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and the Court may not grant the writ of habeas corpus on the basis of a perceived error of state law.  *Harris*, 465 U.S. at 41.  The computation of Petitioner's prison term is not a cognizable issue under 28 U.S.C. § 2254.  *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003).

23

Even if Petitioner's claim were cognizable on habeas review, it lacks merit because Petitioner was on parole when he committed the crimes for which he is incarcerated, and the jail-credit statute (Mich. Comp. Laws § 769.11b) does not apply to parolees who commit new felonies while on parole.  *People v. Idziak*, 484 Mich. 549, 552, 562; 773 N.W.2d 616, 618, 624 (2009).  The Court therefore denies relief on Petitioner's claim regarding credit for time spent in jail.

## F.  Petitioner's Statements to the Police

In his seventh and final claim, Petitioner alleges that his two pretrial statements to the police were involuntary and that trial counsel was ineffective for failing to move to suppress the statements.  The state trial court held an evidentiary hearing on this claim and concluded that trial counsel was not ineffective for failing to move to suppress Petitioner's statements.  The trial court opined that Petitioner's claim was not credible, nor supported by the testimony and records, and that trial counsel was not ineffective for failing to raise a meritless argument.  The Michigan Court of Appeals agreed with the trial court that Petitioner's claim lacked merit.

### 1.  Legal Framework

#### a.  Trial Counsel

The Constitution "does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ."  *Burt v. Titlow*, __ U.S. __, __, 134 S. Ct. 10, 18 (2013).  Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687; *Hodges v. Colson*, 727 F.3d 517, 541-42 (6th  Cir. 2013).

24

The "deficient performance" prong of the *Strickland* test requires the Court to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

To satisfy the prejudice prong of the *Strickland* test, Petitioner must demonstrate a substantial likelihood that counsel's omission altered the outcome of the proceeding. *Richter*, 131 S. Ct. at 792.

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. __, __, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010) . . . .
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.

*Id.*, 131 S. Ct. at 788 (internal and end citations omitted)

### b. Voluntariness of a Confession

For a proper evaluation of trial counsel's performance, the Court must analyze Petitioner's underlying claim that his statement to the police was involuntary. "[A] confession cannot be used if it is involuntary," even if *Miranda*[4] warnings were not

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966), holding that,

the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any

required.  *United States v. Macklin*, 900 F.2d 948, 951 (6th Cir. 1990).  The test for the

voluntariness of a statement to the police is whether

> "the confession [is] the product of an essentially free and unconstrained
> choice by its maker[.]  If it is, if [the suspect] has willed to confess, it may
> be used against him.  If it is not, if his will has been overborne and his
> capacity for self-determination critically impaired, the use of his confession
> offends due process."

*Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (quoting *Culombe v.*

*Connecticut*, 367 U.S. 568, 602 (1961)).  When determining whether a defendant's will

was overborne in a particular case, courts must assess "the totality of all the

surrounding circumstances – both the characteristics of the accused and the details of

the interrogation."  *Id.* at 226 (citations omitted).

> Those potential circumstances include not only the crucial element of
> police coercion, the length of the interrogation, its location, its continuity,
> the defendant's maturity, education, physical condition, and mental health.
> They also include the failure of police to advise the defendant of his rights
> to remain silent and to have counsel present during custodial
> interrogation.

*Withrow v. Williams*, 507 U.S. 680, 693-694 (1993) (citations omitted).  "In a federal

habeas action, the burden of proving that the confession was involuntary rests with the

petitioner."  *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987) (citing *Jurek v. Estelle*,

623 F.2d 929, 937 (5th Cir. 1980)).  "[V]oluntariness need only be proven by a

preponderance of the evidence."  *Id.* (citing *Lego v. Twomey*, 404 U.S. 477 (1972)).

### 2.  The First Statement

---

statement he does make may be used as evidence against him, and that
he has a right to the presence of an attorney, either retained or appointed.

*Id.* at 444.

Petitioner's first statement to the police occurred on June 6, 2008, about a half hour after he was admitted to the hospital for his gunshot wounds and before he had his first surgery.[5]  Petitioner was not in custody at the time; he was lying on a gurney in the resuscitation area when police officer Frank Senter approached him and asked him what happened.  Petitioner responded that he was robbed at the coney island on Warren Avenue near Chalmers Street.  (Trial Tr. Vol. II, 6-8, Sept. 18, 2008.)

At trial, Petitioner testified that he lied to Officer Senter when he stated that he had been robbed.  He testified that he was scared at the time and that he did not want to be arrested for attempting to steal somebody's car.  (*Id.* at 105-06.)  Although he also testified that he was on medication during his five-day stay in the hospital (*id.*), the fact that he was able to concoct a story in an attempt to avoid arrest is an indication that his will was not overborne and that his capacity for self-determination was not critically impaired.

Furthermore, there is no indication that Officer Senter engaged in any police coercion, a necessary element of an involuntary confession.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).  According to Senter, he merely asked Petitioner was happened.  Petitioner did not deny this at the post-conviction evidentiary hearing.  Instead, he testified that he did not recall the interview with Officer Senter.  (Evidentiary Hr'g, 36, 39, 41, Jan. 15, 2010.)  In the absence of any coercive police activity, his statement to Officer Senter was admissible.

### 3.  The Second Statement

---

[5]  Petitioner testified at trial that he was shot twice in the chest and twice in the abdomen and that one finger was shot off.  (Trial Tr. Vol. II, 104, Sept. 18, 2008.)

Petitioner made his second statement to Police Officer Joann Miller about noon on June 7, 2008, approximately three hours after his second surgery. Officer Miller testified at trial that Petitioner was responsive at the time and that he was not heavily medicated. She did not see a respirator in the room and she did not recall seeing an I.V. hooked up to Petitioner. Petitioner did not mention any pain and she had no reason to believe that anything was affecting Petitioner's ability to know what was happening. In fact, the nurses informed her that Petitioner was coherent. (Trial Tr. Vol. I, 146-48, 150, 158-59, Sept. 17, 2008.)

After Officer Miller advised Petitioner of his constitutional rights and Petitioner waived his rights, he informed her that, on the night in question, he had been riding around with a friend when he saw Mr. Le-France's truck at the coney island restaurant. He got out of his car, ran up to the truck, and told the driver to get out of truck. Petitioner admitted to Officer Miller that he had tried to take the truck, but he denied having a gun. (*Id.* at 149, 151-55, 160.) This was similar to Petitioner's trial testimony. (Trial Tr. Vol. II, 95-100, Sept. 18, 2008.)

At the post-conviction evidentiary hearing in state court, Petitioner testified that he was depressed, confused, in extreme pain, and in and out of consciousness during his conversation with Officer Miller. He also claimed that he did not know what was going on at the time, that he had been unable to resist or hold back due to his injuries and medication, and that he had felt obligated to answer the questions put to him. (Evidentiary Hr'g 36-37, Jan. 15, 2010.) At trial, however, he acknowledged the contradiction between his first and second statements to the police, and he testified that he decided to tell the truth during his second statement (the one to Officer Miller)

28

because he thought he should be honest.  He also admitted that what Officer Miller wrote down as his statement was what he wanted her to write down.  (Trial Tr. Vol. II, 109-10, Sept. 18, 2008.)  Petitioner's trial testimony that he made a conscious decision to tell the truth to Officer Miller undermines his claim that his will was overborne due to his injuries and medication.

The other evidence also suggests that Petitioner's statements to the police were voluntary.  Dr. Ronald Thies, the emergency room doctor who treated Petitioner for his gunshot wounds, testified at the evidentiary hearing that Petitioner received morphine and an antibiotic in the emergency room and that he reported his level of pain as eight out of ten on June 7, 2008.  Dr. Thies also testified that gunshot wounds typically are painful, that Petitioner probably had an I.V. in his body to administer medication, and that morphine can cause sedation, confusion, and difficulty with reasoning.  But Dr. Thies could not find anything in the record to indicate what medication Petitioner was given after his surgery on the morning of June 7, 2008, and he thought that Petitioner had answered questions appropriately.  (Evidentiary Hr'g, 7-18, Jan. 15, 2010.)

Petitioner's trial attorney testified at the evidentiary hearing that he acquired Petitioner's medical records before trial and considered moving to suppress Petitioner's statements to the police.  He chose not to file a motion to suppress because, in his opinion, the medical records indicated that Petitioner was merely taking Tylenol Number 3.  He concluded that, because Petitioner was not on any "high powered medications," there was nothing to overbear the voluntariness of Petitioner's statements or to demonstrate that Petitioner did not understand what he was saying to the investigator. (*Id.* at 23-26.)

The attorney admitted that he did not talk to any doctors or nurses about Petitioner's condition. And even though he apparently was mistaken about Petitioner receiving only Tylenol Number 3, he claimed that, during his initial discussions with Petitioner, Petitioner indicated that he understood what he was saying to the police. Petitioner did not say that his wounds or treatment somehow caused him to make a statement. Only after Petitioner received his discovery package and had been in jail for some months did he begin to backtrack and ask to have his statements suppressed on the basis that his statements were involuntary. At that point, counsel requested the medical records, but he did not see anything in the records to substantiate Petitioner's claim about the involuntariness of his statements. The medical records indicated that Petitioner was oriented as to time, place, and manner, and the attorney understood this to mean that Petitioner knew what was going on around him. Had counsel discovered anything in the medical records to indicate that Petitioner's medications caused him to give a statement, he would have filed a motion to suppress the statements. (*Id.* at 27-33.)

The Michigan Court of Appeals determined from the record that Petitioner's statement on June 7, 2008 was voluntary and that its admission did not deprive Petitioner of a fair trial. The Court of Appeals noted that Petitioner was a twenty-five-year-old parolee with previous experience in the criminal justice system, that the officers' questioning of him was relatively brief, and that he had not been deprived of food, water, or medical attention. The Court of Appeals concluded that Petitioner's ineffectiveness claim failed because a motion premised on the alleged inadmissibility of Petitioner's statements would have been futile.

30

The record, as summarized above, supports the state court's conclusions that Petitioner's statements were voluntary and that his attorney was not ineffective for failing to move to suppress the statements.  Petitioner appeared to be coherent and not under the influence of medication when he gave his statements, and he indicated to defense counsel, at least initially, that he knew what he was doing when the police talked to him.  Thus, defense counsel's failure to move for suppression of Petitioner's statements did not constitute deficient performance.  Even if counsel's performance was deficient, the deficient performance did not prejudice the defense, because Petitioner admitted at trial that he attempted to take Mr. Le-France's truck.

Given the deference due under both AEDPA and *Strickland*, habeas relief is not warranted on Petitioner's challenge to the admission of his statements in evidence and trial counsel's failure to move to suppress the statements.

## IV.  CONCLUSION

The decision of the Michigan Court of Appeals was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts.  It certainly was not so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.  Accordingly, the petition for a writ of habeas corpus [ECF No. 1] is **DENIED**.

## V.  CERTIFICATE OF APPEALABILITY

Petitioner may not appeal this decision unless a district or circuit judge issues a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a

certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).


Dated: June 10, 2014                                S/ Sean F. Cox
                                                    Sean F. Cox
                                                    U. S. District Judge


 I hereby certify that on June 10, 2014, the foregoing document was served on counsel
 of record via electronic means and upon Timothy L. Williams via First Class mail at the

address below:

Timothy Williams 373703
Alger Maximum Correctional Facility
Industrial Park Drive
P.O. Box 600
Munising, Mi 49862

S/ J. McCoy
Case Manager